**Angela Y. DAVIS, Plaintiff,**

**v.**

**John V. LINDSAY, individually and as Mayor of the City of New York, George McGrath, individually and as Commissioner of the Department of Corrections of the City of New York, Jessie Behagen, individually and as Superintendent of the Women's House of Detention of the City of New York, Paul McGinnis, individually and as Commissioner of the Department of Corrections of the State of New York, Defendants.**

**No. 70 Civ. 4793.**

United States District Court,
S. D. New York.

Nov. 4, 1970.

Napoleon Williams, Harold Washington, Haywood Burns, New York City, for plaintiff; Margaret Burnham, Stanley Bass, New York City, of counsel.

J. Lee Rankin, Corp. Counsel, New York City, for defendants other than Paul McGinnis; James Nespole and Leonard Bernikow, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. State of N. Y., New York City, for defendant Paul McGinnis; Stephen P. Seligman, New York City, of counsel.

## MEMORANDUM OPINION

LASKER, District Judge.

Angela Davis is held in custody in the New York City Women's House of Detention pending the outcome of extradition proceedings brought by the State of California, which has charged her with kidnapping and homicide. She moves for a preliminary injunction restraining the defendants from holding her in solitary facilities, separate and apart from the general inmate population, and for restoration of privileges accorded to inmates at large which she claims have been denied her in part or in whole. Such privileges include, among others, the right to receive and send mail, to receive, read and possess certain newspapers, journals and books, and to receive visitors.

The action is brought under 42 U.S.C. § 1983 and its jurisdictional complement, 28 U.S.C. § 1343, and seeks a permanent injunction, declaratory relief and damages.

Plaintiff claims that her being held in solitary facilities and deprived of other privileges violates her rights under the First, Fourth, Sixth, Eighth, Ninth and Fourteenth Amendments to the Constitution.

The relevant facts are not in dispute. On October 13, 1970, plaintiff was received at the Women's House of Detention as a federal stop-over, having been placed under arrest as a fugitive by federal authorities. On October 14 the United States Commissioner issued a warrant for her arrest, charging her with having fled the jurisdiction of the State of California to avoid prosecution. On the same day she was transferred from federal jurisdiction to that of the Criminal Court of the City of New York and held without bail as a fugitive from the State of California.

Upon her first entering the Women's House of Detention she was placed on the fourth floor, a section normally reserved for emotionally or psychologically disturbed inmates. According to the affidavit of Jessie Behagen, Superintendent of the Women's House of Detention, this arrangement was made because the fourth floor is a special security area and it was believed that the nature of the charges against the plaintif, the substantial amount of publicity she had received, and the fact that she had been the subject of a nationwide search warranted special precautions. When plaintiff's counsel complained of this treatment, the custodial authorities reviewed the case and agreed to a change of housing which, according to the affidavit of Superintendent Behagen, was to have been on an experimental basis. Accordingly the plaintiff was placed on the eleventh floor in a women's dormitory. It is not clear whether or not this transfer placed her in the general inmate population. Plaintiff states that on the

eleventh floor "I was allowed to converse and mingle with other inmates." Superintendent Behagen says that at this time plaintiff "remained under 24 hour surveillance and was not in general population." Regardless of this disputed fact, on which no present determination turns, there is no question that on October 23, 1970 plaintiff was moved, without any reason being stated to her, to solitary facilities on the seventh floor.

I have advisedly used the phrase "solitary facilities" in describing the arrangements currently in force because the conditions under which plaintiff is presently housed cannot properly be compared to commonly accepted notions of "solitary confinement." For example, although plaintiff is kept separate and apart from all other prisoners, her room is 12 feet by 10 feet and has two windows overlooking Greenwich Avenue, as compared to the 10 by 6 foot size of the usual cells; her room has hot and cold running water, toilet facilities, table, reasonable lighting, and a radio. She is permited library privileges for one hour five days a week, allowed to read the Black Panther newspaper, Muslim newspaper and Black World; to take any five books from the library to her room at one time, and, indeed, books which she has requested that were not in the library have been ordered from the publisher for her; her incoming and outgoing mail is opened to be checked solely for contraband, and is not read or censored. She is accorded visiting privileges similar to those of other detention inmates. I find that, in general, with the exception of her being kept separate and apart from other prison inmates, she has been accorded all the privileges granted to the remainder of the population,[1] and indeed, in some respects such as the size of her room and the availability of a radio, the present arrangements are favorable to her.[2]

## JURISDICTION AND ABSTENTION

The defendants do not contest the jurisdiction of this court, and the decisions of the Court of Appeals of this Circuit forcefully establish that such jurisdiction exists. As Judge Kaufman stated in Wright v. McMann, 387 F.2d 519, 522–523 (1967):

" * * * there is no longer any question that a state prisoner may bring an action under the Civil Rights Act. Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964). * * * And, while federal courts are sensitive to the problems created by judicial interference in the internal discipline of state prisons, in appropriate cases they will not hesitate to intervene. (Citing cases.)

"The harshest blow to the old 'hands-off' doctrine was struck by Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). There, in an action under the Civil Rights Act to recover money damages against city police officers for violating rights secured by the Fourteenth Amendment, the Court held that exhaustion of state remedies was not a condition precedent to accepting jurisdiction. Any remaining belief in the vitality of the exhaustion principle was dispelled when the concurrent jurisdiction of the federal courts in cases under the Act was reaffirmed in clear terms in McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). The Court quoted with approval the language of Judge Murrah in Stapleton v. Mitchell, 60 F. Supp. 51 (D.Kan.1945): 'We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply

---

1. Such privileges include not only those listed in the text, but also commissary privileges, recreational periods and shower arrangements.

2. It is true that because of her being separate and apart plaintiff is unable to view television, which is available to other inmates in a common area.

because the rights asserted may be adjudicated in some other forum.' Id. 373 U.S. at 674, 83 S.Ct. at 1437, n. 6. It is appropriate to note, however, that recently we had occasion to observe that the Supreme Court did not intend *Monroe* and *McNeese* to abrogate the historic principle that federal courts will not entertain a suit in equity when 'plain, adequate and complete' remedy may be had at law. Potwora v. Dillon, 386 F.2d 74 (2d Cir. 1967). Of course, *Monroe* settled beyond cavil that exhaustion is not required when only legal relief is sought. And, in any event, in this suit for both legal and equitable relief it is only too clear that New York's remedies are inadequate."

■ Nor would it be proper for this court to abstain from determining the issue before it. On this subject Wright v. McMann, *supra,* at 524, instructs that " * * * the latest pronouncement on the subject by the Supreme Court emphasizes that the doctrine is to be applied 'only in narrowly limited "special circumstances." ' Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444, * * *."

and further, at 525:

"[i]t is reasonable to conclude that cases involving vital questions of civil rights are the least likely candidates for abstention, e. g., McNeese v. Board of Education, supra, 373 U.S. at 673–674, 83 S.Ct. 1433 * * *."

In applying the rationale of Zwickler v. Koota and *McNeese,* the *Wright* court held that abstention was not appropriate in that case, which, like the present, involved claims by a prisoner of violation of constitutional rights.

## THE CONSTITUTIONAL CLAIMS

Plaintiff contends that defendants' course of action deprives her of her rights under the First Amendment freely to associate and communicate with her fellow prisoners, under the Fourth Amendment to be protected against unreasonable searches (her quarters are searched several times daily), under the Sixth Amendment to advice of counsel (she alleges impediments to conferences with counsel), under the Eighth Amendment to be protected from cruel and unusual punishment, under the Ninth Amendment to "the fundamental right of privacy and freedom from gratuitous humiliation at the hands of the state," and under the Fourteenth Amendment to due process and equal protection of the law.

■ I find that plaintiff's rights to equal protection under the Fourteenth Amendment have been violated and that she should be transferred to quarters shared with the general inmate population and accorded all privileges enjoyed by them. Since no claim is made that the general regulations of the institution violate the Constitution, this disposition of the case renders unnecessary a determination as to the constitutional questions raised other than equal protection.

## DEFENDANTS' JUSTIFICATION OF TREATMENT ACCORDED THE PLAINTIFF

■ Before commenting on the justification proffered by defendants for isolating the plaintiff, it is fair to state, and I find, that the actions of the defendants have not been motivated by disagreement with the plaintiff's political views or by any purpose or wish to harass or humiliate her, but rather by a sincere belief that the welfare of the institution and plaintiff's own safety required special arrangements. I find that plaintiff has not been treated cruelly in any ordinary sense of the word, although I share the view of the court in Sostre v. Rockefeller, 312 F.Supp. 863 (S.D. N.Y.1970), that incarceration in isolation under certain circumstances constitutes cruel and unusual punishment under the Eighth Amendment. Nevertheless, the constitutional question is not to be measured by the motivation of the actors, but by the reasonableness of the challenged act and its effect on the plaintiff.

■ In justification of the decision to isolate the plaintiff, Superintendent Behagen refers first to the background of recent disruptions in the city prisons. Although judicial notice may be taken of the seriousness of such disruptions, Superintendent Behagen's affidavit itself states, as to the Women's House of Detention, that there were only "minor disturbances"; and in any event the reasonableness of treating the plaintiff differently from the general inmate population cannot be justified by reliance upon those events unless dependable evidence is presented to establish that the plaintiff had some connection with them (which is impossible since she was taken into custody after the disruptions occurred) or has shown a propensity in the past to cause such disturbances. No such evidence is in the record. The Superintendent next contends that it became necessary to isolate plaintiff because her presence in the women's dormitory on October 22 had a disruptive effect, since she "rapidly became the center of attraction to inmates, as well as an object of curiosity," slowing down movements of the inmates in the clinical and dental areas.

■ While I understand thoroughly the additional burden which such confusion may have imposed upon the institution's administration, I nevertheless find that it does not constitute justification for depriving the plaintif, who is not charged with having caused such confusion, of the right freely to associate with others, nor for imposing upon her the factual, if not legal, penalty of solitude. To sanction the isolation of plaintiff merely because of the rubbernecking interest of her fellow prisoners would be to hold that all noted or notorious pretrial detainees would automatically be subject to such a factual penalty for reasons beyond their control. Such a rationale does not meet the standards of the equal protection clause.

Finally, Superintendent Behagen contends that, since plaintiff "is a person of national reputation" who describes herself in the complaint in this action (paragraph III) as "an outspoken exponent of the rights of prisoners and of the need to institute radical reforms within society generally and with respect to prison conditions specifically, * * * her incarceration presents problems especially difficult of solution"; that she must be protected from bodily harm and that the institutional administration must also consider "the need to protect the lives of other inmates and institutional personnel as well." Emphasis is placed on the fact that the inmate population is multi-racial, multilingual, with a high turnover rate; that many of the inmates have prior criminal records involving crimes of violence; that there are many among them who do not share plaintiff's views, and that the espousal of such beliefs could set in motion events that might result in bodily harm to plaintiff. It is claimed that it is the responsibility of the institutional administration to be guided by reasonable possibilities, and not to await the event of injury to a prisoner before taking action to protect her.

The difficulty with this rationale is that, while it is estimably logical, it deals only with pure possibility and is supported by no facts or evidence to establish that any real threat to the plaintiff's safety exists or that she herself constitutes a threat to the safety of other inmates and institution personnel. Indeed, such facts as are before the court indicate the contrary. Plaintiff has submitted affidavits of William H. Satterfield and Gerald M. Rivera, both members of the Board of Correction of the City of New York (Mr. Rivera is also a member of the bar of the State of New York). These affidavits establish that on November 1, 1970, each of the affiants visited and inspected the Women's House of Detention and, in particular, the eleventh floor dormitory area where the plaintiff was detained from October 22 to October 23; that the majority of the inmates there were black and Puerto Rican; that none of them expressed any animosity or hostility towards plaintiff; that no threats had

been made against plaintiff during her stay on the eleventh floor, nor had she been subjected to bodily harm or verbal abuse of any kind; that the plaintiff is held in good regard by the prisoners as well as prison officials; and that none of the inmates foresaw disruption or extraordinary conduct should she be returned to their section. The affidavits of Messrs. Satterfield and Rivera have not been countered in any respect by the defendants.

Without doubt prison officials are authorized to isolate persons in their custody when substantial evidence establishes a threat to the safety of the prisoner, other inmates, or institution personnel, but no such showing has been made here. Without such a demonstration or other rational justification, there is no basis under the equal protection clause for discriminatory treatment of the plaintiff. The lack of such a demonstration is sufficient by itself to require that plaintiff be housed with the general inmate population and accorded the privileges enjoyed by them; but this conclusion is reinforced by the fact of plaintiff's status as a pretrial detainee whom the law presumes innocent.

> "In terms of the state's legitimate purposes, citizens detained pending trial are part of a class of arrested persons, in whom the state's only declared interest is to ensure appearance at trial." Constitutional Limitations on the Conditions of Pretrial Detention, 79 Yale L.J. 941 at 947 (1970).

Nothing in the record indicates that the isolation of plaintiff has become necessary to ensure her appearance at trial.

In reaching the conclusion that plaintiff is entitled to be transferred to quarters shared with the general inmate population and to share all privileges enjoyed by them, I do not suggest that the actions taken by the institution's administration have been hasty, malicious or intentionally punitive, nor do I minimize the enormous burden placed on prison administrators at a time when facilities are overcrowded, staff and funding inadequate, and the public highly critical but indifferent to its own responsibilities. To the contrary, it appears that real efforts have been made by the Superintendent to solve what appears, to her, a difficult problem without imposing physical hardship or, in her view, unnecessary deprivation on plaintiff. Nevertheless, as stated by the court in Wright v. McMann, *supra,* 387 F.2d at 526–527, in relation to an analogous problem:

> "While we recognize that our decision in this case may result in some increase in the filing of similar complaints in the district courts, we cannot flinch from our clear responsibility to protect rights secured by the Federal Constitution."

One further matter remains for disposition. Defendant Paul McGinnis opposes the motion and claims that the action should be dismissed as to him on the ground that the complaint fails to allege any acts which constitute a violation by him of 42 U.S.C. § 1983. The only allegation made in the complaint against defendant McGinnis is that he "has the authority to promulgate rules and regulations establishing minimum care, custody, correctional treatment, supervision, and discipline for all persons confined in local correctional institutions." Since the complaint does not allege nor do the papers on this motion establish that defendant McGinnis participated in any way in actions relating to plaintiff, nor that he approved any policies of the City Department of Correction which may have violated the plaintiff's civil rights, no cause of action has been stated against defendant McGinnis, and accordingly the complaint is dismissed as to him.

For the reasons stated above, the plaintiff's motion for a preliminary injunction is granted to the extent of requiring that she be housed with the general inmate population and afforded all privileges enjoyed by them.

**1140**

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, this opinion constitutes the court's findings of fact and conclusions of law.

Submit order.