Henry **CARTER**, Harold Johnson a/k/a Hasson Sharrief el. Shabazz, Ellis Tanner, and Eric (Jomo) Thompson, Plaintiffs,

v.

Paul D. McGINNIS, Commissioner of Corrections of the State of New York, and Vincent R. Mancusi, Superintendent, Attica Correctional Facility, and correctional officer "John Doe," Defendants.

Civ. No. 1970–539.

United States District Court,
W. D. New York.

Dec. 15, 1970.

Herman Schwartz, Buffalo, N. Y., American Civil Liberties Union, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., State of N. Y., Buffalo, N. Y. (Bedros Odian, Asst. Atty. Gen., of counsel), for defendants.

CURTIN, District Judge.

Plaintiffs are currently confined in the Segregation Unit[1] of the Special Housing Unit [Housing Block "Z" or HBZ] at the Attica Correctional Facility. They now move for a preliminary injunction restraining the defendants from continuing their incarceration in HBZ, for the appointment of Herman Schwartz, Esq. as counsel, and for permission to proceed in forma pauperis. Plaintiffs further seek to maintain this as a class action. The motions for the appointment of Herman Schwartz, Esq. as counsel and for permission to proceed in forma pauperis are granted. For reasons that will be discussed further below, the motion that this proceed as a class action is denied.

### JURISDICTION

Notwithstanding this court's firm belief that matters of prison administration and discipline are primarily within the authority and responsibility of the state, it is now settled beyond question—and the attorneys before the court have not debated the point—that claims of the kind presented here are within the jurisdiction of the federal courts under the Civil Rights Act (42 U.S.C. § 1983; 28 U.S.C. § 1343). Indeed, this court may not abstain from hearing and determining these claims. Davis v. Lindsay, 321 F.Supp. 1134 (S.D.N.Y.1970); Rodriguez v. McGinnis, 307 F.Supp. 627 (N.D.N.Y.1969); Wright v. McMann, 387 F.2d 519 (2d Cir. 1967); Monroe v. Page, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

### BACKGROUND OF LITIGATION

An order to show cause and complaint were filed on November 25, 1970, and an amended complaint was filed on December 1, 1970. At argument on the return date, December 3, 1970, the defendants were unable to provide the court with any extensive information in response to plaintiffs' claims. Because of this, the court ordered further argument for December 7, 1970, and directed the defendants to produce at that time specific information.

On December 7, the defendants admitted certain pertinent claims of plaintiffs. On the basis of these admissions, the court directed counsel to arrange an informal settlement conference. Later that day, counsel reported that no settlement could be reached. The court requested both counsel to appear again on December 8.

On the 8th, counsel for the defendants repeated arguments and admissions made earlier. In an effort to discover the precise facts surrounding plaintiffs' claims, the court heard testimony of Attica Superintendent Vincent Mancusi. Harry Fritz, Superintendent of Auburn Correctional Facility, was in court but did not testify.

### FINDINGS OF FACT

On November 2–4, 1970, a disturbance occurred at the Auburn Correctional Facility at Auburn, New York. While plaintiffs were inmates at Auburn on the above dates, their precise roles in the disturbance remain unclear and are still under investigation by state authorities. At the court's request, the de-

---

1. Counsel stipulated with the court that the nature of confinement in segregation involves a harsh reduction of the privileges typically afforded inmates of the general population. Among other things, T.V. and movies are eliminated, food is served in the cells, a maximum of one-hour exercise in a small open-air courtyard is permitted, the normal clothing allotment is reduced, mixing with other prisoners is entirely forbidden, and the recreational and vocational opportunities available in population are not available in segregation. However, the cells are of the same physical dimensions as in general population, the lighting, bed, and toilet facilities are the same, and the collecting of legal materials in the cells is, as in the general population, unrestricted. Confinement in segregation is not an automatic loss of good time allowance. The effect of such confinement on good time is not clear under the rules and regulations. Section 260.4.

ıcııdants' counsel obtained affidavits from various Auburn personnel in an attempt to clarify and indirectly justify the plaintiffs' current form of incarceration.[2]

On November 4, 1970, a state of emergency was declared at Auburn. All inmates, including plaintiffs, were keeplocked. On November 11, Carter and Tanner were transferred to Attica Correctional Facility and immediately placed in segregation. Thompson and Johnson were similarly transferred and confined on November 7 and 9, respectively. All parties agree, and Attica Superintendent Vincent Mancusi so testified, that none of the plaintiffs was accorded a hearing at Auburn, or upon their reception at Attica. The affidavit of Vincent R. Mancusi, Superintendent of Attica, reveals that the plaintiffs were placed in HBZ because of telephone instructions received from the office of the Commissioner of Corrections. Later in the month, a further telephone call from the Commissioner's office directed that, when the plaintiffs next appeared before the Adjustment Committee, they were to be informed that their stay in segregation would henceforth depend upon their attitude and conduct.

Each plaintiff continues to be held in segregation. No charges have been brought against them, and they have not been informed of the reason(s) for their current state of confinement. According to Attica Correctional Facility records, the confinement in segregation is to continue until the investigation of the Auburn disturbance is completed, but no date has been set for its completion and none was offered in oral argument before this court.

## NEW RULES AND REGULATIONS

■ Effective October 19, 1970, the New York State Department of Correction has promulgated new disciplinary rules and regulations, and the court takes judicial notice of them. Under these rules, and according to Superintendent Mancusi's testimony, plaintiffs were transferred to Attica as "detention admissions" [Section 304.4(1) (b)]. A detention admission is one admitted to a special housing unit while awaiting an initial appearance before an adjustment committee. Section 304.1(3). Inmates may be so placed only under the written direction of a supervisory officer designated by the superintendent. Section 304.2(2). Section 304.4(2) further points out:

> In the case of a detention admission that occurs upon receipt of a transferred inmate from another institution, the purpose of such detention shall be solely to ascertain the manner in which the inmate will conduct himself in the present correctional facility
> * * *

Under Subdivision (3) of Section 304.4, an adjustment committee must interview the detention admissions at the committee's first meeting following the date of admission. According to this same section, the committee's procedure

---

2. The affidavit of Auburn Superintendent Harry Fritz, based upon information and belief, states that the plaintiffs were "participants in the various incidents that took place at this facility from November 2, through November 4, 1970." Three affidavits were filed by correctional officers with respect to plaintiff Carter. Two of the officers identified Carter after the disturbance through photographs kept at the Facility. One officer claims personal acquaintance with Carter. All three officers state that Carter was one of a number of inmates who tied the hands of officer-hostages.

One affidavit was presented on Plaintiff Tanner. A correctional officer identifies Tanner from personal acquaintance as an apparent leader of other inmates during one half-hour period of the three-day disturbance.

Plaintiffs Johnson and Thompson are the subjects of six and three affidavits respectively, all submitted by correctional officers. The various claims of these affidavits and the version stated in plaintiffs' complaint are in some conflict and stand unreconciled on the present record.

shall be in accordance with Section 252.-3(6), which provides in pertinent part:

If the committee is not prepared to make a disposition at [its first meeting], the committee shall decide at that time whether the inmate is to be released from such confinement or is to remain in confinement pending disposition of the matter. Where the committee directs that the inmate shall remain in confinement pending disposition, the committee shall interview the inmate again at least once each week during the period of confinement until disposition is made.

Section 252.5, entitled "Adjustment Committee Action", provides:

The objective of adjustment committee action shall be to secure the inmate's understanding of and adherence to the Department's rules and policies governing inmate behavior.

Section 252.5 further provides that the action taken by the committee shall be "based upon the evaluation of the inmate's attitude," and the committee is directed to point out "the elements of the inmate's behavior or attitude that it deems to be unsatisfactory." Where an inmate is unresponsive to the directions of the committee, it may impose restrictions. The most severe restriction is as follows:

Where the inmate's behavior is such that his presence in a general housing unit disrupts the order and discipline of that unit or is inconsistent with the best interests of the facility or of the inmate, confinement in a special housing unit [may be imposed] for a specified period not exceeding one week. * * * Successive extensions of the period of a restriction or restrictions may be made as many times as necessary so long as the committee interviews the inmate at least once during the period and during each extension of the period. [Sections 252.5(5) and (6)].

Finally, where an inmate persists in failure to follow the instructions of the committee, or where the committee deems that formal findings and punitive sanctions are appropriate, a superintendent's proceeding can be recommended. Section 252.6. Such a proceeding involves additional procedural safeguards for the inmate (Sections 253.2–253.4), and provides that additional penalties may be imposed (Section 253.5).

## APPLICATION OF RULES AND REGULATIONS TO PLAINTIFFS

The defendants have provided this court with the following Attica Correctional Facility records of each of the plaintiffs: Inmate Misbehavior Reports, Adjustment Committee Reports, Superintendent's Reports on Review of Adjustment Committee Reports, and the necessary Adjustment Committee Reappearance Reports. In each instance, the Reappearance Report is followed by a Superintendent's Report on Review of the Adjustment Committee Report.

With respect to each plaintiff, the Inmate Misbehavior Report describes the breach of discipline or "Incident" in this language: "For investigation of disturbance at Auburn Correctional Facility." Where the form asks for a description of the inmate's role in the incident, each form is marked "Unknown." Again, with respect to each plaintiff, the first Adjustment Committee Report contains the following: "Comments on review of report and inmate file: Recently arrived from Auburn." And the disposition in each is "continue in HBZ [segregation], pending further investigation." The period of continued confinement, which must be specified according to Section 252.5, is unmentioned. Whether the plaintiffs were notified of any specific charges against them is not apparent from the Adjustment Committee Reports. Where the Committee is directed to describe the inmate's attitude, Thompson is described as "good attitude," Johnson as "poor attitude," and these spaces on Carter and Tanner are left blank.

The Superintendent's reports on reviewing the committee's reports merely indicate confirmation. The attached

Notice to Inmates states in each case: "Continue in HBZ pending further investigation."

With the plaintiffs' second appearances before the committee, the reports become more revealing, although, in terms of acting on the policy of Section 304.2(2), quoted above, they remain generally unhelpful. Thompson's attitude continues to be described as "good," Carter as having a "good attitude," and Johnson and Tanner a "poor attitude." The Superintendent's review of these second appearances again indicates confirmation. Again, the Notice to Inmates remains "continue in HBZ pending further investigation."

These various successive reports continue up to the dates of oral argument on plaintiffs' motion. Johnson becomes the subject of Inmate Misbehavior Reports for failing to obey various directions of correctional officers. Tanner is reported using obscene language and throwing a bowl at an officer. Various additional restrictions were meted out to them.

Inconsistencies develop, however, on the reports on Thompson and Carter. Both continue to be described as "good attitude" but the most recent records further state: "To be detained in HBZ until such time as their behavior and attitude is such that they may be returned to population." Both additionally, according to the reports, continue to be uncertain as to why they are "here" and wish to "go to population."

## CONSTITUTIONAL CLAIMS

Before reaching the merits of plaintiffs' constitutional claims, some prefatory remarks are in order. First, the court is entirely cognizant and appreciative of the point, raised by defendants' counsel and echoed by Superintendent Mancusi in his testimony, that the various prison reports submitted for the court's perusal here were not drafted with the purpose of eventual review by a court removed from the day to day operation of a maximum security prison.

Indeed, the court accords no special weight to these reports except to say that, on an otherwise sparse record, they remain in substance uncontradicted. More precisely, because we are dealing with significant constitutional claims, this court is compelled to act in a manner reflective of those claims.

Second, this court has repeatedly stated in numerous other decisions that it will interfere in prison affairs only in the most exceptional circumstances. The court remains firm in its earlier expressed conviction that the management and discipline of prisons is primarily the business of the State Department of Correction. Only where legal rights reach the magnitude of constitutional rights will this court vary from its normal course.

Finally, in this decision, the court does not intend to imply that Superintendent Mancusi independently and arbitrarily failed to follow departmental rules and regulations. Throughout not only this proceeding but others pending before this court, Superintendent Mancusi has been most cooperative and has exhibited integrity and diligence in the matters pending before the court.

Under the authority of Title 42, United States Code, Section 1983, and its jurisdictional complement, Title 28, United States Code, Section 1343(3), the plaintiffs claim that the defendants have failed to follow their own rules and regulations, and plaintiffs' Fifth, Eighth, and Fourteenth Amendment rights have thereby been violated.

On the record before this court, the plaintiffs' claim that the rules and regulations were not followed stands uncontradicted. In large measure, the rules and regulations demonstrate an awareness of the due process guarantees retained by a prisoner. But, unless followed, these guarantees may be empty and sterile.

On the record, the plaintiffs have never received notice of the charges against them. Other than to say that their confinement in segregation will continue

pending the investigation of the Auburn disturbances, no specification on the length of their current confinement has been offered. The elements of their behavior or attitude which are deemed unsatisfactory have not been reported to them.

■■ If, as Section 304.2(2) of the rules and regulations dictates, the "purpose of [plaintiffs' detention] shall be solely to ascertain the manner in which the inmate[s] will conduct [themselves] in the present correctional facility," it is not clear why their confinement in segregation continues without some meaningful comment on the relationship of their attitude to the above purpose. Without doubt, prison officials may incarcerate inmates in segregation if substantial evidence indicates a danger to the security of the inmates or the facility. There may well be such evidence in this case, but, at a minimum, the prisoners should be informed of it. This is no more than the rules and regulations and due process demand. See Section 252.5. See further Nolan v. Scafati, 430 F.2d 548 (1st Cir. 1970). Further, the court agrees with Judge Foley's statement with regard to indefinite confinements in segregation: "Such allow the Sword of Damocles to hang for considerable periods of time and unquestionably must cause mental aggravation and unrest in a prisoner's mind solely because of indefiniteness." Wright v. McMann, 321 F.Supp. 127 (N.D.N.Y.1970).

For present purposes, it is enough to say that on the record plaintiffs' right to due process was violated. The court finds it unnecessary to reach Eighth Amendment claims. Rodriguez v. McGinnis, 307 F.Supp. 627 (N.D.N.Y. 1969); Nolan v. Scafati, supra.

### CLASS ACTION

■ At oral argument, counsel for plaintiffs asked that James Brown, Attica #26396, be granted whatever relief is granted to the named plaintiffs. His plight became known to counsel after the present complaint was filed. Counsel's averments that Brown is in every respect similarly situated as plaintiffs were uncontested. Therefore, counsel's motion to add Brown as a party plaintiff is granted and he is entitled to the preliminary relief granted the other plaintiffs.

The motion, however, that this action be treated as a class action is in the court's discretion denied. The record in this case is not so developed that the court would be assured it would not encounter unforeseen and substantial difficulties in the management of a class action.

### MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs seek immediate release from segregation and placement in general population. The granting of such relief is not unprecedented. Davis v. Lindsay, supra. See also Hamilton v. Love (E.D.Ark., Oct. 22, 1970, Civil Docket No. LR–70–C–201). And the defendants have on occasion agreed to grant such relief informally, without court order. Mukmuk v. Zelker (S.D.N.Y., August 20, 1970, Civil No. 70 Civ. 3518). The clearest case is *Davis*, but there is a vital difference between that and the instant case. There, the plaintiffs' "solitary confinement" was sought to be justified on "pure possibility." There was absolutely no factual support for the proffered justification. That court ruled that plaintiff Davis should therefore be released into general population.

Plaintiffs in the instant case are being held on the ground that they were participants in the Auburn disturbance. Assuming their accuracy, the defendants' affidavits suggest plaintiffs are guilty of serious disciplinary infractions. But it has so far failed to inform the plaintiffs of the nature of these charges.

■ If the evidence against plaintiffs is so substantial as to justify confine-

ment in segregation for a period now in excess of thirty days, it must *in accordance with its own rules and regulations* present that evidence in a hearing with the inmate present. Section 252.5. On a fair reading of these new rules and regulations, it seems that a Superintendent's Proceeding is authorized and necessary. Section 253.1.

In view of the gravity of the plaintiffs' claims, and, at the same time, the relatively undeveloped record before this court, the relief now ordered is that plaintiffs be accorded a Superintendent's Proceeding. Sections 253.1–253.5. The court would prefer, but does not order, that Superintendent Mancusi himself conduct the proceeding. See Section 253.2(3). All of the due process guarantees offered in the pertinent regulations shall apply to plaintiffs. These proceedings shall be initiated with respect to each plaintiff—Carter, Johnson, Tanner, Thompson, and Brown—within thirty-six hours of the filing of this opinion. Plaintiffs may remain as currently incarcerated during the pendency of the proceedings, but the individual dispositions shall be reached not later than seventy-two hours after the initiation of proceedings. Any disposition shall take into account the time already served in segregation.

Counsel on all sides and this court shall be provided with transcripts of the proceedings within forty-eight hours of the completion of the proceedings.

This court will retain jurisdiction throughout the above ordered proceedings. It shall also retain jurisdiction until all the other matters presented in plaintiffs' complaint and amended complaint, but not discussed in ruling on this motion, are adjudicated.

Upon receipt of the proceedings and disposition, counsel for plaintiffs may make such further motion on short notice as he deems appropriate.

So ordered.