Earl SMOAKE, Plaintiff,

v.

Superintendent Harry FRITZ, Auburn Correctional Facility, Superintendent John L. Zelker, Green Haven Correctional Facility, Paul D. McGinnis, Commissioner, Department of Correction, State of New York, Defendant.

David WALKER, Plaintiff,

v.

Superintendent Harry FRITZ, Auburn Correctional Facility, Superintendent John L. Zelker, Green Haven Correctional Facility, Paul D. McGinnis, Commissioner, Department of Correction, State of New York, Defendants.

Nos. 70–Civ. 5103, 70–Civ. 5104.

United States District Court,
S. D. New York.

Dec. 21, 1970.

Elizabeth M. Fisher, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of State of New York, New York City, for defendants; by John G. Proudfit, Asst. Atty. Gen., of counsel.

CROAKE, District Judge.

## MEMORANDUM

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and its jurisdictional complement 28 U.S.C. § 1343 by which plaintiffs Earl Smoake and David Walker have moved for preliminary injunctions restraining defendants from holding them in solitary facilities separate and apart from the general inmate population of Green Haven Correctional Facility. The facts of the case are as follows.

### I

On the morning of November 2, 1970, a general slowdown began in the plate and tailor shops at Auburn Prison in Cayuga County, New York. Shortly after noon, a group of inmates took possession of the prison yard microphone to announce a Black Solidarity Day to the prison population and urge upon their fellow inmates, both black and white, that all prisoners refrain from working.

To halt rising tensions, a half holiday was declared by the prison warden. This holiday was continued the following day by previous plan (November 3rd being Election Day). However, on the afternoon of Election Day, tensions continued to mount. That evening, the Warden ordered thirteen blacks who had been tentatively identified as taking part in the prison yard activities of the previous day temporarily confined to their cells as a preventive measure. Plaintiffs Earl Smoake and David Walker were among them.

November 4th was supposed to mark a return to normalcy, but the work slowdown continued with inmates demanding the release of the thirteen prisoners and their return to the general prison population. The situation deteriorated rapidly as inmates began to seize control of cell blocks and take prison supervisory personnel as hostages. It was not until the evening of November 4th that full control over the prison was regained by the authorities. Shortly thereafter, the earlier mentioned thirteen prisoners were transferred to various correctional institutions throughout the state. On November 8, 1970, Smoake and Walker were transferred to Green Haven Correctional Facility where they were placed immediately in segregated quarters.

The state contends that plaintiffs are not being kept in solitary confinement or punitive segregation, but rather are being kept in "administrative segregation." The difference though, is largely one of semantics. There is no dispute that plaintiffs are each confined to one small cell for twenty-three hours a day. At no time have they been allowed to mingle with the general prison population or participate in normal prison activities. They are denied access to the prison mess hall to the detriment of their strict religious diet, and may not purchase food in the prison commissary. Neither is allowed to receive Christmas packages. They must wear the same clothing for seven days at a stretch, are permitted showers only once a week, and are not supplied hot water with which to bathe in the interim.

The official explanation for this segregation is that Smoake and Walker are being so confined pending an investigation of the disturbance at Auburn. Both have denied any participation therein and neither has been found guilty of any misconduct related thereto. Nor, for that matter, has either been formally charged with any such misconduct. It is thought by prison authorities though, that plaintiffs were among the prisoners who seized the prison yard microphone and addressed the inmates at Auburn on November 2nd. Also, it has been alleged that they participated in the disturbance at a later stage as well—a charge which plaintiffs also deny.

Pending termination of this investigation, the Green Haven Adjustment Committee interviewed Smoake and Walker once each. In each instance, it recommended that they be kept in segregation because of what was termed "a negative attitude" and "an unwillingness to con-

form to a program of rehabilitation." Of each, Warden John Zelker of Green Haven has stated, "Because of the attitude of this plaintiff, it is felt imperative that at this time he be kept separate from the general population. It is my judgment that the safety of this institution would be jeopardized if this plaintiff were to be returned to the general population."

Still, the fact remains that for over five weeks Earl Smoake and David Walker have been kept in solitary confinement. No charges have been formally lodged against them by prison authorities, nor have they been found guilty of any wrongdoing other than that for which they were originally sentenced. There has been no promised end to the pending investigation. On the basis of these facts, plaintiffs' request that defendants be preliminarily enjoined from holding them in solitary facilities at Green Haven Correctional Facility is granted.

## II

The first matter considered by this court in determining the instant motions was the question of abstention.

This court has a strong belief in the principle that state courts are oftentimes the only proper authority to handle claims against state institutions, and certainly the undersigned has no desire to interfere with the orderly operation of these institutions in any way whatsoever. However, both the United States Supreme Court and the Court of Appeals for the Second Circuit have spoken in terms that are unmistakable on the question of abstention in matters such as the one now before us. The course of action which they prescribe is that this court exercise its jurisdiction.

The harshest blow to the old "hands-off doctrine" was struck by Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961). There the United States Supreme Court held that exhaustion of state remedies was not a condition precedent to the acceptance of jurisdiction by a federal district court in cas-

es of this nature. This line of thought was further continued in Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L. Ed.2d 444 (1967), where the court declared—

> "Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility equally with the federal courts, '* * * to guard, enforce, and protect every right granted or secured by the Constitution of the United States * * *. We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum.'" Zwickler (supra, p. 248, 88 S.Ct. p. 395).

Here in our own circuit, the question of jurisdiction and abstention was disposed of in Wright v. McMann, 387 F.2d 519 (1967) where the Court of Appeals held—

> "There is no longer any question that a state prisoner may bring an action under the Civil Rights Act. * * * And, while federal courts are sensitive to the problems created by judicial interference in the internal discipline of state prisons, in appropriate cases they will not hesitate to intervene." Wright (supra, p. 522).

It is true that, where strands of local law are woven into a case that is before a federal district court, the court may be called upon to abstain. However, in the present case, there is no underlying issue of state law controlling the litigation. The rights alleged are plainly federal in origin and nature. They stem directly from the Constitution of the United States, and are not in

any way "entangled in a skein of state law that must be untangled before the federal case can proceed." McNeese v. Board of Education, 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963). Accordingly, it is the duty of this court to decide upon the matter in question. *Zwickler* (*supra*), *McNeese* (*supra*), *Wright, supra*.

### III

Given the obligation of this court to entertain plaintiffs' motions, the court now turns its attention to the merits of the sought for preliminary injunction.

A preliminary injunction is an extraordinary remedy which should be issued only upon a clear showing of probable success and possible irreparable injury to the moving party. However, it should be noted that the burden of showing probable success is less where the balance of hardships weighs decidedly more heavily upon the party requesting the temporary relief. Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319 (2d Cir. 1969). Accordingly, where plaintiffs are incurring substantial hardship as the result of solitary confinement, they. are required to show only "a substantial chance of success" in order for a preliminary injunction to be granted. It appears that such a showing has been made here.

As was noted by Judge Weinfeld of this court less than one month ago—

"The fact that a man is confined to a penal institution under a valid judgment of conviction does not strip him of all his constitutional rights. * * * The Due Process and Equal Protection clauses [of the Fourteenth Amendment] follow him into prison and there protect him from unconstitutional action on the part of prison authorities carried out under color of state law." Fortune Society v. McGinnis, 319 F.Supp. 901 (1970).

These rights are not hollow ones. They are the bulwark of our society and, while curbed of necessity in our prisons, even there they are not without vitality.

Thus, in Wright v. McMann (*supra*), the Court of Appeals for this Circuit ordered injunctive relief on eighth and 14th amendment grounds for a prisoner held in solitary confinement and recently, within the Southern District of New York, United States ex rel. Wolfersdorf v. Johnston, 317 F.Supp. 66 (1970), Sostre v. Rockefeller, 309 F.Supp. 611, (D.C.1969), and Davis v. Lindsay, 70 Civ. 4793, 321 F.Supp. 1134 (1970), have all reaffirmed this principle.

Within this framework, plaintiffs have shown a substantial chance of success. For over five weeks, they have been held in solitary confinement. No charges have been lodged against them, nor have they been found guilty of any wrongdoing other than that for which they were originally sentenced. Yet the duration of their solitary confinement now threatens to extend for an indefinite time, with possible physical and psychological harm.

It is the belief of this court that the five weeks plus which have passed since the Auburn Prison disturbances should have been sufficient time to investigate and prepare charges against plaintiffs if any were warranted. Accordingly, the preliminary injunctions they seek are granted as stated hereafter.

### IV

In closing, this court wishes to state most emphatically its belief that prison officials may isolate persons in their custody when there is evidence of a substantial nature to justify the belief that a threat to orderly prison operations exists. Clearly, as was stated by Judge Weinfeld in Fortune Society v. McGinnis, *supra*. "A prisoner has only such rights as can be exercised without impairing the requirements of prison discipline. * * * a compelling state interest centering about prison security, or a clear and present danger of a breach of prison discipline, or some substantial interference with orderly institutional administration can justify curtailment of a prisoner's constitutional

rights." Also, it should be made clear that plaintiffs' release from segregated units should in no way be interpreted by them as a license to disrupt prison life at any time.

Furthermore, it should be reaffirmed that this decision attempts no final judgment as to the merits of the controversy at hand and grants only interlocutory relief. Should the state desire further consideration of the merits, at any time within five days of the filing of this memorandum, it may request a hearing on the issue of why this order should not be stayed, and this order shall not take effect until the expiration of that five-day period. In all other respects, the normal federal procedure relating to the granting of injunctions shall remain unaffected.

With these qualifications, plaintiffs' requests for preliminary injunctions enjoining defendants from holding them in solitary facilities at Green Haven Correctional Facility are granted.

So ordered.