Julio WELLS, Plaintiff,

v.

Paul D. McGINNIS, Commissioner of Correction of the State of New York, et al., Defendants.

No. 70 Civ. 5357.

United States District Court, S. D. New York.

June 6, 1972.

Julio Wells, pro se.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, for defendants, by Amy H. Juviler, New York City, of counsel.

GURFEIN, District Judge.

This is a civil rights action brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and the First, Fourth, Sixth, Ninth and Fourteenth Amendments to the Constitution of the United States. Jurisdiction is based on 28 U.S.C. § 1343. All of the alleged violations of the plaintiff's rights took place when he was an inmate at Green Haven Correctional Facility or the Brooklyn House of Detention.

The complaint demands fifty thousand dollars ($50,000) damages and injunctive relief barring further violations of the plaintiff's rights and directing his release on parole. The complaint also seeks a writ of habeas corpus.

The plaintiff was conditionally released from Green Haven on April 15, 1972. His claims for injunctive and habeas corpus relief are thus mooted. The issue of damages remains.

The defendants McGinnis, Zelker and Sawner[1] move to dismiss the complaint on grounds thaat the Court lacks subject matter jurisdiction, Fed.R.Civ.P. 12(b) (1), and that the complaint fails to state a cause of action upon which relief can be granted, Fed.R.Civ.P. 12(b) (6). In the alternative these defendants move for judgment on the pleadings, Fed.R. Civ.P. 12(c), or for summary judgment, Fed.R.Civ.P. 56(b). The plaintiff *pro se* filed no papers opposing the motions.

In support of the allegation of a conspiracy to deprive him of rights under color of law the plaintiff lists the following "overt acts":

1. When the plaintiff commenced an earlier civil rights action in the Northern District of New York, United States ex rel. Wells v. McMann, 68 Civ. 99 (1969), while confined at Auburn Prison, local counsel was appointed for the plaintiff. While the matter was *sub judice* before Judge Port, the plaintiff was transferred to Green Haven, for the alleged purpose of "limiting the plaintiff communication with his attorney" (¶ 10).

2. In or about that same month, the plaintiff forwarded to his attorney a memorandum of law to be edited and presented to the Northern District in the case then pending. The memorandum was returned to the plaintiff with the incorrect explanation that the addressee was not on the plaintiff's writing list, in spite of the fact that but two days earlier the plaintiff had sent a letter to his attorney, who received it. This alleged interference thwarted the plaintiff in presenting to the Court a "proper elucidating memorandum" (¶ 11). The plaintiff then attempted unsuccessfully to forward the memorandum to counsel via the plaintiff's mother but she did not receive it, the inference being that it was censored (¶ 12).

3. Letters to his family about prison conditions were alleged to have been withheld (¶ 13). Certain legal papers were removed from his cell (¶¶ 17, 20). On or about June 19, 1970 the plaintiff was taken to the "prison court," where the Deputy Warden ordered his legal pa-

---

1. These defendants are, respectively, the former Commissioner of Correction of the State of New York and the Superin-tendent and Deputy Superintendent of Green Haven Correctional Facility.

pers confiscated and punished the plaintiff with the loss of all recreation and exercise for 30 days (¶ 18). In or about July 1970 he was again brought to the "prison court" and was told that another inmate had some of the plaintiff's legal papers and that access by inmates to one another's legal materials was not permitted. The plaintiff was then sentenced to ten days in his cell (¶ 19).[2] The plaintiff also alleges that he is "circumscribed in the use of the prison's law library" (¶ 21).

4. The plaintiff complains that he was not allowed to appear before the Prison Commutation Board "as authorized by Section 235 of the Correction Law [McKinney's Consol.Laws c. 43]" when that body considered the restoration of good time credit previously denied to the plaintiff. He claims there was a lack of due process in that he was given no advance written notice of what constituted punishable conduct, no notice of the possible punishment for particular infractions, and no notice of the nature and cause of accusations (¶¶ 39–40).

### I

■■ Although the defendants contend that the earlier civil rights action, *supra*, brought by the plaintiff in the Northern District in 1968 and decided against him, is *res judicata* on some of the issues pleaded here, I find that the issues in the earlier action were not the same. The Northern District allegations all related to plaintiff's imprisonment in Auburn Prison. The only imprisonments here involved relate to Green Haven and the Brooklyn House of Detention, though the plaintiff also claims an improper denial of "good time" credits earned at Auburn. All the other allegations relate to a period after October 24, 1969 when he was transferred to Green Haven. The circumstance that

each case charges conspiracy against him by prison officials does not spell out *res judicata,* for new wrongs could have arisen aften the transfer which were unrelated to the earlier "conspiracy." Of course, strict doctrines of *res judicata* do not apply in this field. See Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1962). Cf. Rhodes v. Meyer, 334 F.2d 709 (8 Cir.), cert. denied, 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 186 (1964). Nor need a civil rights plaintiff exhaust state remedies in an action brought under the civil rights statute. 42 U.S.C. § 1983. Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); Rodriguez v. McGinnis, 456 F.2d 79 (2 Cir. Jan. 25, 1972).

### II

■ The transfer of the plaintiff from Auburn Prison to Green Haven was certainly consistent with the State's proper custody of the plaintiff. See Bundy v. Cannon, 328 F.Supp. 165, 173 (D.Md.1971); United States ex rel. Verde v. Case, 326 F.Supp. 701, 704 (E.D.Pa.1971). Even if communication with the plaintiff's counsel was hampered by the transfer, this does not make out a deprivation of the plaintiff's civil rights. The filing of a lawsuit does not *ipso facto* prevent an administrative transfer. More of a factual predicate would have to be stated.

### III

■■ The charge that the authorities at Green Haven prevented the transmittal of a memorandum of law to plaintiff's counsel is, however a serious one. Such communications are sui generis. Channels of communication between a prisoner and his counsel must be kept open. Prison authorities may not "withhold, or refuse to mail a communication be-

---

2. The official record attached to the Zelker affidavit shows he was punished for lying about the circumstance of the other inmate's possession of the plaintiff's papers rather than for passing the papers.

tween an inmate and his attorney, . . . or any court, or any public official, unless it can be demonstrated that a prisoner has clearly abused his rights of access." Sostre v. McGinnis, 442 F.2d 178, at 200; see Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). This claim is one upon which, if it is proved, relief can be granted and it is therefore sufficient to withstand the motion to dismiss.[3]

■■ The claim that prison authorities refused to mail his letters concerning "illegal prison treatment and punishment" to his father and sister come under a different rubric than do letters to court and counsel. Control over such letters may generally be imposed. Sostre v. McGinnis, 442 F.2d at 199. The plaintiff alleges no special facts to take his claim out of the general category, and it is dismissed.

■ Treating the claim of removal of legal papers from the plaintiff's cell as separate from the claim relating to suppression of access to his attorney, the allegation does not support a claim for relief. The plaintiff, unlike Sostre, did not have "political writings" in his cell, which for purposes of prison discipline—to prevent them getting into the hands of other inmates—the Warden could properly confiscate. Sostre v. McGinnis, 442 F.2d at 202. The question is, therefore, not of First Amendment right, but of right of access to the courts which we are instructed to preserve even though " 'writ writers' . . . are sometimes a menace to prison discipline." Johnson v. Avery, 393 U.S. at 488, 89 S.Ct. at 750. The mere confiscation of the law books without a claim that this involved denial of access to the courts is, however, insufficient. Bryant v. Craven, 415 F.2d 775 (9 Cir. 1969); Argentine v. McGinnis, 311 F. Supp. 134, 138 (S.D.N.Y.1969). Here,

at least as to the taking of his law books by the officials of the Brooklyn House of Detention, he specifically alleges that he needed the books for an appeal then pending.[4] There is no similar allegation as to the confiscation of his law books at Green Haven. That charge is, therefore, dismissed.

■ The plaintiff claims that he was punished by the prison court for allowing other inmates to have access to his legal papers. The record shows he was punished for lying. In any event, that an inmate may not share or assist in the preparation of legal papers without permission of the Superintendent has been upheld as a reasonable regulation. Sostre, supra, 442 F.2d at 201; Johnson v. Avery, supra.

## IV

■ The plaintiff complains that he was not allowed to appear before the Prison Commutation Board "as authorized by Section 235 of the Correction Law" when the withholding or restoration of good time credit was being considered. That statute did not require appearances by inmates. It was repealed effective the 60th day after May 8, 1970. This action was commenced December 8, 1970. The complaint does not give the dates when the Board met to consider the plaintiff's case.

The defendants have not controverted, by affidavit, the allegation that "On or about November 12, 1969, the clerk of Green Haven Prison informed plaintiff . . . . that defendants had decided to withhold six hundred and sixty-eight (668) days of good time credit from plaintiff as punishment" for alleged violations of prison rules and regulations, though they have denied the allegation in their answer. In support of their mo-

---

3. The complaint also notes that the plaintiff's mother never received the letter and memorandum which he sent to her after he unsuccessfully tried to send the memorandum to his counsel. This allegation also survives.

4. There is no motion before me by Warden Silverglitt of the Brooklyn House of Detention.

tion for summary judgment, they point to the current regulations concerning the "Superintendent's Proceeding" as showing the strict adherence to due process now in force in the determination of withholding "good time" for infractions of prison rules (7 NYCRR 253). But these rules did not become effective until October 19, 1970, and we have not been told what the rules were in 1969 and prior years.

In view of the importance of the procedural aspect and the failure of the defendants to sustain the burden placed on a movant for summary judgment, the motion is denied, without prejudice to its renewal on more adequate papers. All that is before us now is an affidavit by Superintendent Zelker in which he states that the plaintiff was punished for his repeated infractions of prison rules and disciplined "in accord with accepted prison procedure." While this procedure may have been the very procedure which the Court of Appeals has already held to be not beyond constitutional bounds, *Sostre, supra,* 442 F.2d at 194–199, that must still be determined as a question of fact with regard to this plaintiff. The motion for summary judgment on this phase of the case may not, therefore, be granted at this time.[5]

Paragraphs 10, 13, 17, 18, 20, and 21 of the complaint are dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b) (6). Summary judgment in favor of the moving defendants is granted as to the claim in paragraphs 19, 22, 24, 25 and 26 relating to the giving of legal papers and legal advice and assistance to other inmates. Fed.R.Civ.P. 12(b) (6), 56(b). In view of the incomplete record summary judgment is denied with respect to the other paragraphs of the complaint, without prejudice to renewal.

It is so ordered.

5. While Judge Port, in the earlier case, specifically found that the plaintiff was given an opportunity to make a statement in mitigation of punishment after pleading guilty to fighting while in possession of a "sharpened stilleto," and that "the disciplinary action taken was not in violation of the plaintiff's rights to due process of the law," Judge Port did not pass on other incidents for which the plaintiff was punished. A fuller set of motion papers is, therefore, required.