**Richard SCHUMATE, Plaintiff,**

**v.**

**The PEOPLE OF the STATE OF NEW YORK and its agents, namely, Comm. Peter Preiser, et al., Defendants.**

**No. 73 Civ. 5234.**

United States District Court,
S. D. New York.

April 12, 1974.

Richard Schumate, pro se.

Louis J. Lefkowitz, Atty. Gen. of N. Y., Jerold Probst, Asst. Atty. Gen., New York City, for defendants.

LASKER, District Judge.

Plaintiff, a state prisoner, presently incarcerated in the Clinton Correctional Facility in Dannemora, New York, brings this action against the State Commissioner of Correctional Services and several correctional officers, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343 (3).

Plaintiff alleges that, while incarcerated in Green Haven Correctional Facility in Stormville, New York, he was a member of the work-release program, and as such, permitted to attend church services off prison grounds. On one occasion, two members of the program (but not himself, as was apparently claimed by prison officials) were observed by correctional officers in the company of a woman on church grounds. Plaintiff claims that following a visit from his wife on the same day, during which he and his wife were allegedly insulted by prison officers, he was summarily placed "in the box", (a form of punitive segregation) for a week, as punishment for the incident on church grounds; that he then was permitted a seven day furlough, but replaced in segregation upon his return for another five days, and then transferred to Clinton. Plaintiff further alleges that certain personal effects (chiefly clothing) valued at $500. were seized upon his return to Green Haven from furlough, and have not been forwarded to him at Clinton despite his efforts to locate them.

I.

Plaintiff's first claim is that his transfer to Clinton was a reprisal for the incident on church grounds and that he was entitled to a hearing prior to the transfer. The claim lacks merit. The New York Commissioner of Corrections, through his agents, is empowered to transfer inmates from one facility to another. Correction Law, § 23 McKinney's Consol.Laws, c. 43, 1973–4 Supp. A transfer between two correctional institutions of similar character and security classification is within the administrative discretion of state correctional officials. Wells v. McGinnis, 344 F.Supp. 594, 596 (S.D.N.Y.1972); Bundy v. Cannon, 328 F.Supp. 165, 173 (D. Md.1971); United States ex rel. Verde v. Case, 326 F.Supp. 701, 704 (E.D.Pa. 1971). The only situation in which allegations that no hearing was held prior to transfer state a § 1983 claim is where the character of the confinement is substantially changed, raising the inference

that the transfer is punitive, rather than purely administrative. See Newkirk v. Butler, 364 F.Supp. 497 (S.D.N.Y.1973) (transfer from medium to maximum security institution as alleged punishment for assertion of first amendment rights). United States ex rel. Schuster v. Herold, 410 F.2d 1071 (2d Cir.) cert. denied, 396 U.S. 847, 90 S.Ct. 81, 24 L.Ed.2d 96 (1969) (due process safeguards required in transfer from prison to a prison mental hospital). However, plaintiff's case does not fall within this exception, since he was transferred from one maximum security facility to another, and he does not allege that any punitive measures were imposed upon his arrival at Clinton, cf. Bundy v. Cannon, supra. Consequently, the motion to dismiss as to plaintiff's first claim is granted.

## II.

Plaintiff's second claim, that he and his wife were defamed by correctional officers following the incident on church grounds must also be dismissed. A claim of defamation is not encompassed within 42 U.S.C. § 1983, since defamation involves no infringement of a constitutional right. Rosenberg v. Martin, 478 F.2d 520 (2d Cir.) cert. denied, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed. 2d 90 (1973); Heller v. Roberts, 386 F.2d 832 (2d Cir. 1967). Accepting plaintiff's allegations as true, and in no way minimizing his possible humiliation, "not every push or shove . . . violates a prisoner's constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.) cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

## III.

Plaintiff's third claim relates to his being placed "in the box", then released for furlough, and, on his return, being put back "in the box" until his transfer to Clinton five days later.

The facts alleged by plaintiff as to the circumstances of his segregation are unclear. He raises no objections as to the hygienic conditions of his confinement or their pallatability, Wright v. McMann, 387 F.2d 519 (2d Cir. 1967); LaReau v. MacDougall, 473 F.2d 974 (2d Cir. 1973), and the complaint does not indicate whether plaintiff was placed in punitive segregation or mere disciplinary keep-lock.

Because the defendants have not filed affidavits relating to the incidents in question, we must rely solely upon plaintiff's affidavit. See, e. g., Baynes v. Ossakow, 336 F.Supp. 386, 389–390 (E.D.N.Y.1972). Accepting the truth of plaintiff's allegations, he was placed in segregation, removed from it when his wife arrived a week later and given what appears to be a modified Superintendent's Hearing. As a result of the hearing, at which correction officers testified against him, he was released on furlough. Not every disciplinary lock-up or keep-lock constitutes a deprivation of constitutional rights. Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972). Sczerbaty v. Oswald, 341 F.Supp. 571, 573 (S.D.N.Y.1972). Although allegations of unnecessarily restrictive, protracted security not reasonably related to prison discipline state a claim under § 1983, Walker v. Mancusi, 338 F.Supp. 311 (W.D.N.Y.1971), aff'd, 467 F.2d 51 (2d Cir. 1972), Smoake v. Fritz, 320 F.Supp. 609 (S.D.N.Y.1969), even given the liberality with which pro se pleadings are to be construed, Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1971), plaintiff's allegations are not sufficiently particularized to state a deprivation of due process. Indeed, it is difficult to understand what deprivation of due process he intends to state.

Consequently, defendants' motion to dismiss is granted as to this claim unless within thirty days of the entry of this order, plaintiff amends his complaint with regard to his claims as to segregation and due process with greater specificity.

## IV.

Plaintiff alleges his summary removal from the work-release program constitutes a denial of due process, citing Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct.

2593, 33 L.Ed.2d 484 (1972), which held that a hearing was required before revocation of parole. By statute, Correction Law, § 851 et seq., the work-release program enables inmates of state correctional facilities to spend several working days per week off the prison grounds in gainful employment, returning to prison each evening. Various ancillary privileges, such as church attendance off the grounds, are allowed inmates involved in the program. Clearly, this program appears to be one of the desirable privileges among prison inmates, and, insofar as it is a half-step to freedom, resembles parole and conditional release programs.

Defendants take the position that administration of the work-release program is strictly an internal matter within the discretion of prison officials.

There appears to be no decision holding that due process requires a hearing prior to termination of participation in a work-release program. However, an increasing number of courts are beginning to repudiate the doctrinal distinctions between rights and privileges, and disciplinary and administrative decisions, which have been traditional bulwarks of the "hands-off" policy of the federal courts in prisoners' rights cases. See, e. g., Landman v. Royster, 333 F.Supp. 621, 645 (E.D.Va.1971), Newkirk v. Butler, *supra*, 364 F.Supp. at 502. Even before *Morrissey*, this Circuit held, on facts similar to those involved there, that while the initial determination to release on parole is a matter of administrative discretion, its revocation requires certain minimal due process safeguards, including the right to counsel. Bey v. Conn. State Board of Parole, 443 F.2d 1079 (2d Cir. 1971).

In *Morrissey,* the Court explicitly rejected the right-privilege distinction, as well as the reasoning of the court below that a parolee is still technically "in custody" and that parole is only "a correctional device authorizing service of sentence outside the penitentiary." 408 U.S. at 474, 92 S.Ct. at 2597. The Court observed that "the liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime," and that the decision to parole reflects an evaluation that the prisoner "shows reasonable promise of being able to return to society and function as a responsible, self-reliant person." (408 U.S. at 482, 92 S.Ct. at 2600.) The court concluded that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' . . . [which] calls for some orderly process, however informal." (408 U.S. at 482, 92 S.Ct. at 2601.) The Court went on to hold that due process requires notice specifying what violations are alleged; and then a preliminary hearing to determine whether there exists probable cause to detain the parolee. The preliminary hearing must be before a neutral and detached hearing officer, at which the parolee can present evidence, call witnesses and question adverse witnesses. The hearing officer is required to compile an informal record of the proceedings for submission to the parole board. Due process also requires, as the *Morrissey* court held, a relatively formal revocation hearing and a written statement summarizing the evidence relied upon and the reasons for revocation.

■■ Termination from a work-release program does not inflict the same "grievous loss" of liberty as parole revocation, and consequently due process in the present case does not require the relatively elaborate procedures articulated in *Morrissey.* However, it does not follow that one in plaintiff's position has not suffered some "grievous loss" which entitles him to the appropriate measure of due process. In Sostre v. McGinnis, 442 F.2d 178, 194–199 (2d Cir. 1971), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972) this Circuit held that before serious disciplinary action can be taken against a prisoner he is entitled to an informal hearing. *Sostre* and *Morrissey* are perhaps distinguishable because they more clearly involved punitive elements than a decision to terminate work-release, which may be a primarily "rehabilita-

tive" decision. Nevertheless, as the *Sostre* court observed, the distinction "between 'liberty' and a 'privilege' . . is nowhere more meaningless than behind prison walls." (442 F.2d at 196). Read together, *Sostre* and *Morrissey* indicate that where significant freedoms are involved—whatever their label—an appropriate measure of due process may be required.

Accordingly, we are unable to say, in this posture of the case, that plaintiff could prove no state of facts supportive of his claim. Because plaintiff may not at this stage of the proceedings have knowledge of what (if any) established procedures the prison follows in terminating work-release, and because the complaint does not describe in detail the extent of the "freedom" involved in the program, the motion to dismiss as to this claim is denied pending further discovery.

### V.

Plaintiff's final claim is that personal articles valued at $500. were seized from him by a correctional officer upon his return from furlough and never sent with him to Clinton when he was transferred.

Until recently a claim of mere infringement of property rights, or theft or confiscation of property by prison officers, was not held to be actionable under 42 U.S.C. § 1983, Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970). Argentine v. McGinnis, 311 F. Supp. 134 (S.D.N.Y.1969); Urbano v. Calissi, 384 F.2d 909 (3rd Cir. 1967), cert. denied, 391 U.S. 925, 88 S.Ct. 1824, 20 L.Ed.2d 664 (1968); Almond v. Kent, 321 F.Supp. 1225, 1228 (W.D.Va.1970), rev'd on other grounds, 459 F.2d 200, 204 (4th Cir. 1972); Howard v. Swenson, 314 F.Supp. 883 (W.D.Mo.1969), aff'd 426 F.2d 277 (8th Cir. 1970).

However, in light of the Supreme Court's decision in Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972) which undercut the former distinction between "constitutional rights" and "property rights", courts have begun to recognize that property rights of prisoners are entitled to protection under § 1983 from abuse by prison officers. In Russell v. Bodner, 489 F.2d 280 (3rd Cir. 1973) a prison guard's alleged action in entering a prisoner's cell and confiscating seven packages of cigarettes without justification was held to state a claim under § 1983. In Lathan v. Oswald, 359 F.Supp. 85, 88–89 (S.D.N.Y. 1973) a prisoner's allegations that prison guards had stolen from his cell a number of cartons of cigarettes, and a quantity of groceries was also held to state a § 1983 claim. The present complaint alleges that defendant Stevens seized certain items of clothing (of an alleged value of $507.) when he was placed in segregation; that the clothing was not itemized on the property inventory sheet sent to Clinton with plaintiff's other belongings, and that his inquiries about his clothing were unavailing. These allegations are equivalent to the § 1983 claims of unjustifiable confiscation of personal property recognized in Lathan v. Oswald, *supra*. Accordingly, defendants' motion to dismiss as to the "property" claim is denied as to the individual correction officer named, but granted as to Commissioner Preiser. The doctrine of *respondeat superior* does not apply in Civil Rights proceedings, and there are no allegations of personal complicity by the Commissioner. Lathan v. Oswald, *supra*.

In sum, (1) as to plaintiff's claims relating to administrative transfer and defamation, the motion to dismiss is granted as to all defendants; (2) as to plaintiff's claims relating to work-release and property theft, the motion to dismiss is denied as to all correction officers; (3) the motion to dismiss as to the Commissioner is granted on all claims except the one relating to the work-release program, and (4) as to plaintiff's claims regarding confinement in segregation, the motion to dismiss is granted unless within thirty days of the entry of this order, plaintiff amends his complaint by further particularizing his claims of violation of due process.

It is so ordered.