Carl **B. HOITT, Jr.,** et al.,
Plaintiffs, Appellants,

v.

Joseph **C. VITEK,** etc., et al.,
Defendants, Appellees.

No. 73-1349.

United States Court of Appeals,
First Circuit.

Heard Jan. 7, 1974.

Decided May 16, 1974.

Kurt M. Swenson, Manchester, N. H., for appellants.

David W. Hess, Asst. Atty. Gen., with whom Warren B. Rudman, Atty. Gen., Concord, N. H., was on brief, for appellees.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Plaintiffs are a class of prisoners who brought an action against the warden of the New Hampshire State Prison under 42 U.S.C. § 1983 seeking injunctive relief and damages arising from an extended lockup, ranging from three weeks for some of the prisoners to two months for others. The district court granted partial relief but granted summary judgment dismissing that part of the complaint seeking damages for the prisoners' confinement. 361 F.Supp. 1238 (D.N.H.1973). Plaintiffs appeal from that judgment.

The complaint alleged that a wholesale lockup of ninety per cent of the prison population followed threats by prison guards to leave their work when the food steward, long a target of prisoners' criticisms, was dismissed. Appellants allege an absence of any real emergency situation or danger, they being in no possession of weapons or dangerous instrumentalities, the lockup having been a means of appeasing the guards and having been instituted without such procedural due process safeguards as notice, hearing, findings of facts, or probable cause. As the result of the lockup, the appellants allege, they suffered an unreasonable and unnecessary deprivation of (1) toiletries and hygienic aids for some fourteen days, (2) medicines and medications for many days, (3) nutri-

tionally balanced hot meals for some eleven days, (4) writing materials for seven days, (5) access to counsel for nine days, (6) toilet facilities for four days, (7) access to church services for some five weeks, and (8) opportunity to work for prison wages during the period of their confinement.

■ Certain facts concerning the lockup were stipulated. The warden submitted a motion to dismiss and an affidavit stating that the actions which he took were compelled by his conviction that an emergency existed. The district court, after considering the complaint, stipulation, and affidavit held that the challenge to the validity of the lockup failed to state a cause of action, since, the warden having acted in good faith, damages could not be recovered.[1]

■ The district court read the complaint as requesting an examination of the conditions at NHSP prior to the warden's institution of the lockup to determine whether the warden was correct in his assessment that an emergency existed or that it was caused by the prisoners. We read much of the complaint and the plaintiffs' statement of contested facts in the same light. We agree with the district court in its determination that if a prison-wide emergency is deemed to exist it "is not within the province of a court to second-guess the judgment of correction officials by deciding after the fact whether a lockup was, in fact, justified." 361 F.Supp. 1238, 1242. As we have recently said in connection with emergency transfers of prisoners, "We recognize that present or impending disturbances which might overtax the control capacity of a prison creates a dominant interest in prison au-

thorities being able to act without delay if they feel that delay would endanger the inmate, others, or the prison community. Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1970). This is so even though the assessment of difficulties may subsequently prove to be unfounded." Gomes v. Travisono, 490 F.2d 1209, 1215 (1st Cir. 1973).

■ We therefore hold that there was no right to procedural due process and no denial thereof in effecting the lockup and that the emergency confinement by itself did not constitute cruel and unusual punishment. O'Brien v. Moriarty, 489 F.2d 941 (1st Cir. 1974). We add that we share the concern of the district court, expressed in an order during the proceedings below. "[E]mergencies, however, cease to be emergencies when they continue indefinitely and inmates cannot be kept confined to their cells indefinitely in alleged violation of their constitutional rights merely on the assertion of the Warden that prison security requires it." The unreviewable discretion of prison authorities in what they deem to be an emergency is not open-ended or time unlimited. A complaint seeking an injunction, alleging in suitable detail an extensive and unreasonable continuation of a lockup after the termination of an emergency, would survive a motion to dismiss; summary judgment would be appropriate where essential facts are undisputed. See O'Brien v. Moriarty, supra, at 944. And such allegations, coupled with an assertion that the confinement was being continued in bad faith as a subterfuge for the denial of prisoners' procedural rights, would call for an evi-

---

1. The affidavit of the warden being "outside the pleading", we will treat the court's ruling on the warden's motion to dismiss as summary judgment. F.R.Civ.P. 12(b)(6). The plaintiffs assert that this was not a proper case for summary judgment because they were not afforded the opportunity to submit affidavits. The district court specifically requested an offer of proof to which plaintiffs responded by a general offer to substantiate all their allegations. Even if this was an adequate response, the court's action in proceeding to judgment was proper. The plaintiffs both in their pleadings and statement of factual issues never contended that the warden did not believe an emergency existed. The plaintiff's claim was that there was no emergency. There was therefore no factual dispute on the issue of good faith determination of emergency and no reason for the district court to afford further opportunity to present material under Rule 56.

dentiary hearing in a suit seeking damages. *See* Palmigiano v. Baxter, 487 F.2d 1280, 1293 (1st Cir. 1973).

Apart from claims based on the confinement itself, the claims of deprivation of various necessities, amenities, and services during confinement warrant separate comment. Prisoners have not made these claims before in the context of a prison-wide emergency. However, even where normal conditions obtain in a prison some of the claims stated would fail under previous standards. Others tread into areas uncharted by prior guidance.

■■ In the first category are the claims alleging cruel and unusual punishment based upon deprivation of medications and medical care and deprivation of hot meals. As to the medical claims, the complaint failed to allege either an intent to harm the inmates or injuries and illnesses so severe or obvious, as to require medical attention. Page v. Sharpe, 487 F.2d 567 (1st Cir. 1973), Church v. Hegstrom, 416 F.2d 449 (2d Cir. 1969). *See also* Hirons v. Director, Patuxent Institution, 351 F.2d 613 (4th Cir. 1965); Basista v. Weir, 340 F.2d 74 (3d Cir. 1965). The allegation of deprivation of hot meals also fails to state a claim of cruel and unusual punishment, given the stipulation that three meals were provided daily, including milk, cereal, and four meat sandwiches.

What remains in the complaint are allegations of continued deprivation of hygienic necessities, writing materials, work opportunity, and access to counsel and church services for periods ranging from four days to the maximum two month period of confinement. To the extent that the allegations challenged the imposition of these restrictions as an emergency measure—the major thrust of the complaint—we have already disposed of the allegations in holding that emergency decisions of a warden are not reviewable by a court. To the extent that the allegations challenge the duration of the restrictions, they raise novel questions of liability and defense with which we must briefly deal.

■ The assessment of the continued validity of broad scale measures to deal with prison-wide problems is not to be resolved by reference to cases dealing with individuals,[2] and involving preexisting standards of common law tort liability.[3] The allegations we are now considering probe an area where little or no precedent is available and force us to consider the proper principle to apply. Questions of both pleading and proof must be approached within the context of the qualified immunity available to prison authorities. As Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967), makes clear, § 1983 does not "abolish wholesale all common law immunities". A prison warden, charged with controlling an unwilling population, aided by perhaps an inadequate number of guards, faces the most demanding and delicate decisions as to the nature and extent of the sanctions he should impose and the timing and effect of their removal. Thus, as we said recently in Palmigiano v. Mullen, 491 F.2d 978, 980 (1st Cir. 1974), before there can be recovery there must be proof of "bad faith or at least such a degree of neglect or malice . . . as to deprive defendants of official immunity for merely erroneous action."

■ While this concept of immunity is usually thought of in connection with defenses which can be raised, its exis-

---

2. Cases involving individuals who were deprived of hygienic necessities include Wright v. McMann, 387 F.2d 519, 521 (2d Cir. 1967); Hancock v. Avery, 301 F.Supp. 786 (M.D.Tenn.1969); Jordan v. Fitzharris, 257 F.Supp. 674 (N.D.Cal.1966). Cases involving deprivation of access to the courts or counsel include Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941); Smith v. Robbins, 454 F.2d 696 (1st Cir. 1972); Nolan v. Scafati, 430 F.2d 548 (1st Cir. 1970).

3. *See, e. g.,* Whirl v. Kern, 407 F.2d 781 (5th Cir. 1968) (false imprisonment); Jenkins v. Averett, 424 F.2d 1228 (4th Cir. 1970) (assault); Joseph v. Rowlen, 402 F. 2d 367 (7th Cir. 1968) (false arrest).

tence necessarily has some bearing on what must be alleged by a plaintiff. In such a case as this, involving officials clothed with a qualified immunity, we would assume that a viable complaint challenging a post-emergency lockup must allege nothing less than the continued deprivation of basic rights or needs for an unreasonable length of time, maliciously, through excessive neglect, or arbitrarily (e. g., without any justification of practical necessity related to prison security).[4] The complaints in this case, liberally read, arguably meet those requirements. But that is not the end of our examination.

Another principle, very much alive in § 1983 damage actions, is that cases are to be judged "against the background of tort liability that makes a man responsible for the natural consequences of his action." Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961). The corollary is that for one to anticipate consequences, there must be some consequences to anticipate. As the Court said in Pierson v. Ray, 386 U.S. at 557, an official "is not charged with predicting the future course of constitutional law." See also Bowens v. Knazze, 237 F.Supp. 826, 828 (N.D.Ill.1965). Since, as we have noted, there has been virtually no guidance given on this subject, the district court acted properly in dismissing the complaint. We add that we view this as an exceedingly rare kind of disposition, applicable only in an ex-

ceptional situation where, as here, a broad field of conduct has been singularly bereft of standards, some of which we hope we have now supplied.[5]

Affirmed.

---

4. While an allegation of specific intent to violate constitutional rights would be sufficient, such is not required. See Pierson v. Ray, 386 U.S. at 556. For cases in other circuits adopting a similar approach to pleading requirements, see Carter v. Carlson, 144 U.S.App.D.C. 388, 447 F.2d 358 (1971); Jenkins v. Averett, 424 F.2d 1228 (4th Cir. 1970); Whirl v. Kern, 407 F.2d 781 (5th Cir. 1968); Joseph v. Rowlen, 402 F.2d 367 (7th Cir. 1968); Basista v. Weir, 340 F.2d 74 (3d Cir. 1965); Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963); Cohen v. Norris, 300 F.2d 24 (9th Cir. 1962) (en banc).

5. After this opinion was prepared the Supreme Court issued its opinion in Scheuer v.

Rhodes, —— U.S. ——, 94 S.Ct. 1683, 40 L. Ed.2d 90, 42 U.S.L.W. 4543 (1974). We have considered whether Scheuer dictates reversal. We have concluded that it does not. For reasons discussed, supra, in footnote 1, defendant's subjective good faith is not an open issue on this record. Moreover, in contrast to Scheuer, where a summary judgment was predicated on a factual record of reliance, investigation, and knowledge found not to be conclusive as to liability, the critical factor here was the lack of standards of legal responsibility relevant to the situation stemming from a prison emergency that would reasonably have forewarned one in defendant's position that his alleged actions could be deemed tortious.