Thomas C. **BLAIR**, Plaintiff,

v.

Fred **FINKBEINER**, Former Warden, Joliet Correctional Center, Defendant.

No. 75 C 1607.

United States District Court, N. D. Illinois, E. D.

Oct. 7, 1975.

Thomas C. Blair, pro se.

William J. Scott, Atty. Gen. of Ill., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

MAROVITZ, Senior District Judge.

### I.

Plaintiff Thomas C. Blair, formerly a resident at the Joliet Branch of the Illinois State Penitentiary and presently a resident at the Menard Correctional Center, brings this pro se civil rights action pursuant to 42 U.S.C. § 1983 against the former warden of the Joliet Correctional Center seeking declaratory relief, an injunction and monetary damages. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(3).

Plaintiff alleges that he was placed in dead-lock confinement from April 22, 1975 until May 21, 1975, the date of his transfer to the Menard facility, in violation of his constitutional rights and without the benefit of due process of law; that he was subjected to cruel and unusual punishment while in dead-lock confinement; and that he was transferred from Joliet to the Menard facility without prior notice or hearing which deprived him of due process of law.

Pending before us is defendant's motion to dismiss pursuant to Rule 12(b)(6) F.R.Civ.P. for failure to state a claim upon which relief can be granted, or in the alternative for summary judgment pursuant to Rule 56 F.R.Civ.P.

**1094**

## II.

From the pleadings in this case it appears that on April 22, 1975, a disturbance erupted in the West Cellhouse of the Joliet Correctional Center, during which several inmates held about twelve hostages for a period of approximately six hours. Substantial damage was caused to the West Cellhouse premises, and tear gas was used by prison authorities to aid in quelling the uprising. Based upon the emergency nature of the situation, the entire population of the West Cellhouse, including plaintiff, was transferred to the East Cellhouse of the Joliet facility where all residents were placed on emergency dead-lock. During the course of the weeks following the uprising, as portions of the West Cellhouse were repaired and cleared of contraband, and in accordance with prison security determinations, groups of residents were gradually transferred back to the West Cellhouse. On May 21, 1975, plaintiff was released from dead-lock and transferred to the Menard Correctional Center.

## III.

Plaintiff's first claim challenges his emergency transfer to and his continued confinement in dead-lock at the East Cellhouse as being violative of. due process, in that he was not afforded a hearing prior to the transfer and that he was kept in dead-lock for an inordinate amount of time.

■ ■ Due to the very nature of internal prison administration, wide latitude must be afforded prison officials in their exercise of disciplinary functions. As we have previously noted, "this court will not second guess penological judgments which are wholly within the expertise of prison officials, and absent any clear or blatant violation of due process the federal court will not interfere with prison administration." *United States ex rel. Miller v. Twomey,* 333 F.Supp. 1352, 1353 (N.D.Ill.1971). Particularly in instances of emergency situations where prison authorities are faced with serious threats to the security of the prison community, "it is not within the province of a court to second-guess the judgment of corrections officials by deciding after the fact whether a lockup was, in fact, justified." *Hoitt v. Vitek,* 361 F.Supp. 1238, 1242 (D.N.H.1973), *aff'd,* 497 F.2d 598 (1st Cir. 1974).

■ Though it is well-settled that certain due process rights must be afforded prisoners despite their incarceration, *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Miller v. Twomey,* 479 F.2d 701 (7th Cir. 1973), there remain instances where the general needs of the prison institution must prevail over the individual prisoner's rights. *Miller v. Twomey, supra,* at 717. In the wake of the April 22, 1975 uprising, the conditions at the Joliet facility presented precisely such an instance.

In considering the issue of dead-lock confinement in a recent opinion, the Seventh Circuit noted, in language particularly applicable to the case at bar:

> The due process clause provides an elastic, flexible standard which varies with attendant circumstances.
>
> \* \* \* \* \* \*
>
> In situations such as the present, when prison authorities are allegedly reacting to emergency situations in an effort to preserve the safety and integrity of the institution, the state's interest in decisive action clearly outweighs the inmates' interest in a prior procedural safeguard. "[T]he possibility of widespread violence is a continuous condition of prison life. A good faith determination that immediate action is necessary to forestall a riot outweighs the interest in accurate determination of individual culpability before taking precautionary steps." (Citations omitted).

*LaBatt v. Twomey,* 513 F.2d 641, 645 (1975).

■ The same deference we must afford prison administrators in reviewing

their imposition of emergency dead-lock, we must also afford them in reviewing their decision as to when and how to terminate it. In this light, we find the thirty day confinement to which plaintiff was subjected not to be patently unreasonable under the circumstances, and the gradual lifting of the general dead-lock to be within the sound discretion of the prison authorities.

■ We therefore conclude, in balancing the emergency needs of the prison against the rights of the plaintiff, that neither plaintiff's placement nor his thirty day retention in emergency dead-lock violated his constitutional right to due process, and grant defendant's motion for summary judgment as to this portion of the complaint.

### IV.

■ Plaintiff alleges that the conditions of his confinement in dead-lock amounted to cruel and unusual punishment in violation of the Eighth Amendment. We find this claim to be without merit.

■ After careful review of the allegations in plaintiff's complaint we cannot conclude that the conditions to which he was subjected while in dead-lock were so base, inhuman or barbaric as to fall within the proscription of the Eighth Amendment. Further, the acknowledged emergency situation which precipitated the general dead-lock and the restrictive conditions which resulted therefrom are necessarily intertwined. As the Seventh Circuit noted in *LaBatt v. Twomey, supra*, at 648, "response to emergency situations in a prison environment necessarily entails curtailment of rights and privileges of the inmate population." We therefore hold that in the specific setting of a prison emergency, where certain remedial measures are determined to be necessary, prison officials may, within their discretion curtail certain rights of prisoners, and unless those curtailments prove to be extremely harsh or unduly excessive, they will not reach the dimensions of an Eighth Amendment violation. *See, Hoitt v. Vitek*, 497 F.2d 598 (1st Cir. 1974); *LaBatt v. Twomey, supra.*

Accordingly, we dismiss this portion of plaintiff's complaint for failure to state a claim upon which relief can be granted.

### V.

■ Plaintiff's final allegation is that his due process rights were violated when he was denied notice and hearing prior to his transfer from the Joliet Branch to the Menard Correctional Center. Upon review of the pertinent case law we conclude that we must dismiss this portion of plaintiff's complaint for failure to state a cause of action.

■ Standing alone, the transfer of a state prisoner from one maximum security institution to another within the same state does not violate any constitutional right. *See, e. g., Stuart v. Yaeger*, 293 F.Supp. 1079, 1081 (D.N.J.1968), *aff'd*, 419 F.2d 126 (3rd Cir. 1969), *cert. denied*, 397 U.S. 1055, 90 S.Ct. 1400, 25 L.Ed.2d 673 (1970); *Gray v. Creamer*, 465 F.2d 179, 187 (3rd Cir. 1972); *Wells v. McGinnis*, 344 F.Supp. 594, 596 (S.D. N.Y.1972). Plaintiff does not allege any of the "serious changes of status" *Bryant v. Hardy*, 488 F.2d 72, 73 (4th Cir. 1973), resulting from transfer, which have prompted judicial inquiry into the applicability of constitutional guarantees. *See, Gomes v. Travisono,.353* F.Supp. 457, 467 (D.R.I.), (and cases cited therein), *aff'd*, 490 F.2d 1209 (1st Cir. 1973).

Accordingly, defendant's motion to dismiss as to plaintiff's claims regarding the nature of his dead-lock confinement and his transfer to the Menard Center, and defendant's motion for summary judgment regarding the actual placement of plaintiff in dead-lock confinement are hereby granted, and this cause is dismissed.