Edward B. GRAY # 128–899, etc.

v.

Mark A. LEVINE, etc., et al.

Richard K. JEFFRIES # 118–997 et al.

v.

Ralph WILLIAMS, etc.

Jerome DUVALL, etc.

v.

Mark A. LEVINE, etc., et al.

Leon Edward BURTON # 129–722, etc.

v.

Ralph L. WILLIAMS, etc., et al.

James George ROSE

v.

Mark A. LEVINE, etc., et al.

Fred J. MADERO # 138–712

v.

Mark A. LEVINE, etc., et al.

Civ. Nos. B–77–1958, B–77–2044, B–77–2094, B–77–2136, B–78–306 and B–78–409.

United States District Court, D. Maryland.

July 24, 1978.

All plaintiffs pro se.

Francis B. Burch, Atty. Gen., of Maryland, Stephen Rosenbaum, Diane G. Goldsmith, and W. Timothy Finan, Asst. Attys. Gen., Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

These six civil rights actions, filed by prisoners incarcerated in the Maryland

House of Correction (MHC), arise from the institution's response to a work stoppage, or strike, conducted by inmates at the MHC in late October 1977. Because all complaints raise similar claims in whole or in part, they will be considered together. Individual issues will be treated separately as required. Named as defendants in the various actions are the state commissioner of the Division of Correction and the warden and assistant warden of the MHC. The defendants in each case have moved for summary judgment, and plaintiffs have been notified of their right to file appropriate responses. *See Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975).

■ At the outset the court notes that plaintiffs in several cases have requested appointment of counsel. As more fully set forth below, the court finds that the questions raised in the cases do not present "exceptional" circumstances requiring appointment of counsel. *Cook v. Bounds,* 518 F.2d 779 (4th Cir. 1975). Plaintiffs in several cases also seek to represent a class. It is settled, however, that a *pro se* plaintiff cannot be an adequate class representative. *Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir. 1975).

The court also observes that Judge Harvey has rendered decision in a class action suit challenging general living conditions at the MHC. *Johnson v. Levine,* 450 F.Supp. 648 (D.Md.1978). To the extent that the complaints may be construed to present claims pertaining generally to conditions at the MHC rather than directly connected to the work stoppage, those claims are governed by Judge Harvey's decision.

Plaintiff in B–77–1958 in his "Opposition Motion of Plaintiff" filed February 9, 1978 makes an incidental reference to a broken nose he allegedly suffered in January at the hands of another inmate at the instance of a guard. If plaintiff desires to assert this as a claim, he should do so in a separately drafted complaint.

Similarly, plaintiff's complaint in B–78–409 refers tangentially to some allegedly retaliatory act taken by the defendants. Because this assertion is not stated as a basis for relief and is unrelated to the essential issues related to the work stoppage, plaintiff is instructed to present it as a claim, should he so desire, in a separate action.

*Basic Work Stoppage Issues*

The essential facts common to all complaints are not in dispute. On October 31, 1977 most of the working population of the MHC participated in a protest work stoppage. In response to the strike and to disturbances in the dining room prison authorities determined on November 1 to confine most inmates to their cells. Those inmates who held prison jobs and desired to work were permitted to do so. They were released from their cells in order to work, were fed in the prison dining room, and had some recreational opportunities. Inmates who refused to work were confined in their cells from November 1 through November 10, when they were permitted to eat in the dining room. The ranks of the working inmates increased steadily during this period. Over the next several days after November 10, restrictions on the population were gradually lessened until the MHC returned to normal operation on November 14.

Plaintiffs in the six cases, seeking damages in addition to equitable relief, complain that confinement in their cells for the period described above was in violation of their constitutional rights. Their claims, as synthesized from all complaints, challenge their confinement without a due process hearing and attack various deprivations attendant upon that confinement. Plaintiffs complain of the constant confinement in and of itself in a two-man cell for the ten-day period, of an assertedly inadequate diet consisting of cold sandwiches served in their cells, and of a denial of recreation, showers and other sanitary needs, visitation privileges, religious activities, law library privileges, and medical care. The question of alleged denial of medical care will be treated separately.

**269**

■ It is clear, of course, that the work stoppage was not an activity protected by the Constitution. *See Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). This court also proceeds from the established premise that prison officials must be accorded wide discretion in coping with the complex and difficult problems of operating a penal institution. "Prison administrators are responsible for maintaining internal order and discipline [and] for securing their institutions against unauthorized access or escape . . . ." *Procunier v. Martinez,* 416 U.S. 396, 404, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974). Thus, federal courts have traditionally maintained "a broad hands-off attitude toward problems of prison administration." *Id. See also Jones, supra,* 433 U.S. at 126, 97 S.Ct. 2532; *Cruz v. Beto,* 405 U.S. 319, 321, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Nevertheless, court deference to determinations of state prison officials must yield to the strictures of the Constitution. *See Wolff v. McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

■ To the extent that plaintiffs challenge the mere fact of their confinement or the reasons for confinement, the court finds that they have failed to state a claim of constitutional dimensions. Particularly broad discretion should be accorded prison authorities in their responses to conditions which may threaten the security of the institutions they manage. "Prison officials reacting in good faith to perceived emergency situations must not be unduly hindered by overbroad federal judicial scrutiny, on the basis of hindsight, of the factual basis underlying their actions." *La Batt v. Twomey,* 513 F.2d 641, 647 (7th Cir. 1975); *accord, Gilliard v. Oswald,* 552 F.2d 456, 458–59 (2d Cir. 1977); *Hoitt v. Vitek,* 497 F.2d 598, 600 (1st Cir. 1974). In the circumstances at issue in the instant cases MHC officials were confronted with a general strike by the majority of prison inmates as well as disturbances in the prison dining room. Furthermore, the record indicates sporadic incidents of minor violence. In these circumstances the court concludes not only that the general lockup was not an abuse of authority or ordered in bad faith but also that it appears fully justified as a prudent security measure. Moreover, the court finds no violation of equal protection or due process in the decision of the prison authorities to confine the general population as a whole, with the exception of those prisoners who expressed a willingness to work. *See La Batt, supra,* 513 F.2d at 648–49.

Some of the complaints challenge the imposition of confinement without prior notice and hearing as violative of procedural due process guarantees. As discussed above, confinement was ordered in response to a perceived emergency, and such confinement lasted for less than two weeks as the situation gradually ameliorated. Assuming that certain procedural due process rights attach in circumstances such as existed in the MHC—*compare Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), *with Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)—the court finds no violation of due process. *See Gilliard, supra,* 552 F.2d at 459; *La Batt, supra,* 513 F.2d at 645–47; *Hoitt, supra,* 497 F.2d at 600; *Hodges v. Klein,* 421 F.Supp. 1224, 1231–32 (D.N.J.1976), *aff'd,* 562 F.2d 276 (3d Cir. 1977).

Plaintiffs also challenge the conditions which attended to constant confinement in their cells during the ten days in which restrictions were imposed. As the court has stated, it finds that prison authorities acted reasonably in imposing confinement for the relatively brief period at issue here. The restrictions on meals, recreation, showers, visits, attendance at religious services, and library privileges were necessary concomitants of this confinement. Moreover, it appears that inmates who were willing to return to their assigned duties were thereby entitled to be released into the general population. The court cannot say that the confinement, the serving of cold meals, and

the other restrictions imposed were "incompatible with 'the evolving standards of decency that mark the progress of a maturing society,'" *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)), and therefore concludes that there has been no violation of the Eighth Amendment's proscription of cruel and unusual punishment. *See La Batt, supra,* 513 F.2d at 648; *Hoitt, supra,* 497 F.2d at 601; *Blair v. Finkbeiner,* 402 F.Supp. 1092, 1095 (N.D.Ill.1975); *cf. Sweet v. South Carolina Dept. of Corrections,* 529 F.2d 854, 860–61 (4th Cir. 1975).

### Medical Claims

Plaintiff in B–77–1958 also alleges that medical care services were interrupted, but he fails to assert in any manner that he required medical attention. The state has responded that medication was distributed and that emergency hospital services were available. This response and the record which supports it are sufficient to show the absence of "deliberate indifference to serious medical needs," *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), at least concerning the general needs of confined inmates and in the absence of specific claims of denial of medical care.

Plaintiffs in two of the cases have attempted to advance such specific claims. Plaintiffs Jeffries, Ferguson, and Schaffer in B–77–2044 have alleged denial of medical treatment for recurring back pain, chronic bronchitis, and a nervous condition, respectively. An unopposed affidavit filed by the defendants, however, states that none of the plaintiffs requested medical treatment during the time in question. Moreover, none of the plaintiffs allege severe physical injury in any sense. As discussed above, the court concludes that failure to provide the full panoply of routine medical services during a limited period of emergency conditions does not constitute cruel and unusual punishment. The court finds no violation of the standard set forth in *Estelle.*

Plaintiff in B–77–2136 alleges that he received inadequate treatment for sickle cell anemia during the period of confinement. However, defendants have filed an affidavit of the MHC chief physician, who stated that although plaintiff's test for sickle cell anemia showed a positive result, he was not in need of treatment for the disease. Plaintiff has failed to controvert this affidavit and, consequently, has failed to establish a claim under *Estelle.*

Accordingly, it is this 24th day of July, 1978, by the United States District Court for the District of Maryland ORDERED that summary judgment be, and hereby is, GRANTED in favor of the defendants and against the plaintiffs in each of the instant actions, except as to the potential claims noted as raised in B–77–1958 and B–78–409, which are DISMISSED without prejudice.