**Ivan FIGUEROA, Plaintiff,**

v.

**Judge William KAPELMAN, et al., Defendants.**

**No. 80 Civ. 3202.**

United States District Court,
S. D. New York.

Jan. 13, 1981.

---

Ivan Figueroa, pro se.

Robert Abrams, Atty. Gen. of N.Y. by Eleanor Janosek Doyle, Deputy Asst. Atty. Gen., New York City, for defendant Justice Kapelman.

Allen G. Schwartz, Corp. Counsel, New York City, for defendant Benjamin Ward; Richard N. Bowers and Carol S. Bernheim, New York City, of counsel.

## OPINION AND ORDER

OWEN, District Judge.

Defendants William Kapelman, Justice of the Supreme Court of the State of New

York, and Benjamin Ward, New York Commissioner of Correctional Services, pursuant to Fed.R.Civ.P. 12(b)(6), move to dismiss plaintiff's complaint on the ground that it fails to state a claim upon which relief can be granted. Plaintiff Ivan Figueroa is a *pro se* litigant, incarcerated in Downstate Correctional Facilities. His complaint, liberally construed, alleges a series of claims arising under the Civil Rights Act of 1871, 42 U.S.C. § 1983, for the alleged violation of several rights guaranteed by the Constitution of the United States. He seeks $1,000,-000 in money damages and collateral relief from his underlying criminal conviction.[1]

Plaintiff alleges that, while detained in the Bronx House of Detention and awaiting trial in Supreme Court, Bronx County, he led a group of detainees in refusing to attend court proceedings in their respective cases. The boycott, which lasted from January 17–22, 1980 is alleged to have been in protest of "the injustices that prevail in the court system, . . . ." Plaintiff who claims to have been the chairman of this protest group, states that he called off the boycott after meeting with defendant Kapelman and that he was in "constant communication" with the Justice thereafter. On March 16, 1980, claiming that Justice Kapelman had reneged on a promise to meet with the group, plaintiff and his followers recommenced their court boycott. Plaintiff asserts that he telephoned the offices of both defendants to announce the decision of his group again to refuse to go to court and that within three hours he had been transferred to the Brooklyn House of Detention.

All of the claims which plaintiff asserts under § 1983 arise from his transfer from the Bronx to the Brooklyn House of Detention. He alleges:

1) that the transfer was in retaliation for his exercise of his right of free speech, namely, his telephone calls to the defendants, in which he announced the renewal of the court boycott, and that the transfer thus violated his rights under the First Amendment;

2) that the transfer separated the prisoner from his attorney, thereby violating the prisoner's Sixth Amendment right to have the assistance of counsel;

3) that the transfer necessitated that he be transported from Brooklyn to Supreme Court, Bronx County for court proceedings, that he was en route much longer than he was in court, and that the transfer thus constituted cruel and unusual punishment in contravention of the Eighth Amendment;

4) that the transfer constituted some unexplained form of mistreatment by the court and thus infringed the prisoner's guarantee to due process of law; and

5) that the prisoner was returned to the Brooklyn House of Detention from his Bronx court appearances so late at night that his meals were cold and he could not use the telephone or see the doctor, thus depriving him of the equal protection of the laws.

Two basic principles must be kept in mind here. First, *pro se* complaints filed by prisoners alleging constitutional claims arising under the Civil Rights Act of 1871 are not to be judged by the same stringent standards as are formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972). Second, an action may not be dismissed unless it is clear that the plaintiff will be unable to prove any facts in support of his claims which would entitle him to relief. *Id.* at 521, 92 S.Ct. at 596. Although the plaintiff has failed to allege any specific facts, in either his amended complaint or his affidavit in opposition to the instant motions, which would link the defendants directly to the decision to transfer him,[2] I

---

1. The Civil Rights Act of 1871 is not available for a collateral attack of a criminal conviction. Such relief may be obtained by an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and then only after the exhaustion of all available state remedies.

2. Although plaintiff fails to specify the acts which the two defendants allegedly performed in depriving him of his civil rights, he does allege that the defendants were personally involved in the claimed deprivation, thereby saving his action from dismissal on this ground under *McKinnon v. Patterson*, 568 F.2d 930,

684

assume that his intention was to allege an agreement or a conspiracy between Justice Kapelman and Commissioner Ward to punish plaintiff for the exercise of some right of freedom of speech by transferring him to the Brooklyn House of Detention, and to deprive him thereby of various civil rights conferred by the Constitution.

■ Although plaintiff, in effect, alleges joint action by the defendants, his claims against the two must be considered separately. The doctrine of judicial immunity requires this separate consideration because, except in rare circumstances, judges are shielded from civil liability for actions undertaken in the exercise of judicial authority. *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). The Supreme Court, in *Stump*, applied and elaborated on the test of *Bradley v. Fisher*, 13 Wall. 335, 20. L.Ed. 646 (1872), which is that a judge does not forfeit his or her judicial immunity unless the act in question was not a "judicial act." An act is not a "judicial act" when it is undertaken "in the 'clear absence of all jurisdiction' [*Bradley v. Fisher*], 13 Wall., at 351." *Stump v. Sparkman*, supra, 435 U.S. at 356–7, 98 S.Ct. at 1104–05. The Court looks to two factors in determining whether a particular act by a judge is judicial: 1) "the nature of the act itself, *i. e.*, whether it is a function normally performed by a judge, and 2) . . . the expectations of the parties, *i. e.*, whether they dealt with the judge in his judicial capacity." *Id.* at 362, 98 S.Ct. at 1107.

■ Although the complaint leaves open the specific acts that plaintiff would attempt, at trial, to prove Justice Kapelman committed in depriving plaintiff of his civil rights, there can be no doubt that such acts, even if proved, would be "judicial acts" under the test enunciated in *Stump*. Moreover, plaintiff's own complaint and affidavit make clear that the alleged acts of Justice Kapelman, assuming they occurred, were of a judicial nature and were performed in the justice's judicial capacity, and thus were insulated from suit by his cloak of judicial immunity. Accordingly, defend-

ant Kapelman's motion to dismiss is granted.

■ I next turn to the charges against Commissioner Ward. Plaintiff's first claim is, in essence, that Ward transferred him to Brooklyn in retaliation for his telephone call announcing the renewal of the prisoners' court strike and that the transfer infringed his First Amendment right of free expression by penalizing him for exercising it. While punishing a prisoner for the mere expression of his beliefs violates the First Amendment's guarantee of freedom of speech, *Sostre v. McGinnis*, 442 F.2d 178, 202 (2d Cir. 1971) (*en banc*), binding on the states by the Fourteenth Amendment, *Gitlow v. New York*, 268 U.S. 652, 666, 45 S.Ct. 625, 630, 69 L.Ed. 1138 (1925), plaintiff cannot seriously contend that the phone calls he placed were mere expressions of belief. Rather, they were declarations of immediate action which neither plaintiff nor his followers was entitled to take. A criminal defendant has no right to refuse to stand trial; nor may he attempt to organize others to do the same. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). Thus, it is necessarily within the authority of prison officials to take appropriate steps, including transfer, to prevent the disruption which could follow a concerted effort by pre-trial detainees to boycott court proceedings. N.Y. Correction Law § 23 (McKinney, 1979–80 Supp.); *Schumate v. New York*, 373 F.Supp. 1166, 1167 (S.D. N.Y.1974).

■ Thus, although plaintiff denominates his first claim as one for the infringement of his right of free speech, it is, in reality, a claim that he was transferred for refusing to go to court. This allegation does not state a claim for relief under 42 U.S.C. § 1983. A transfer between two correctional institutions of similar character is properly within the administrative discretion of state correctional officials, *Schumate v. New York, supra*, and constitutes neither a deprivation nor even a punishment.

934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).

■ Plaintiff's second allegation is that the transfer had the effect of infringing his Sixth Amendment right to counsel by separating him from his attorney. The fact that communication between plaintiff and his counsel might have been hampered thereby does not make out a deprivation of plaintiff's civil rights, *Wells v. McGinnis,* 344 F.Supp. 594, 596 (S.D.N.Y.1972), at least where the prisoner does not allege that he was prevented altogether from conferring with his counsel, *Mingo v. Patterson,* 455 F.Supp. 1358, 1362 (D.Colo.1978).

■ Plaintiff's third allegation is that the transfer, which necessitated that he be transported from Brooklyn to the Bronx and back each day that he was on trial, constituted cruel and unusual punishment. It cannot be seriously urged that this is "barbarous" or "shocking to the conscience," *Sostre v. McGinnis, supra,* at 191, and the allegation therefore fails to state a claim.

The fourth cause of action plaintiff seeks to assert is said to arise under the due process clauses of the Fifth and Fourteenth Amendments. In his complaint, however, plaintiff alleges no more than that such a violation occurred. In his affidavit in opposition to defendants' motions to dismiss, plaintiff attempts to flesh out this claim by asserting that he was "denied his rights to the courts, because he purely was mistreated by the court." Even this fails to inform the court of the nature of the claim, and it is therefore dismissed.

■ The final allegation in plaintiff's complaint is that he was denied equal protection of the laws in violation of the Fourteenth Amendment. Although his complaint again alleges no facts, his affidavit in opposition does appear to claim that these equal protection violations arise from 1) defendant's decision to transfer only plaintiff, although other inmates were prepared to boycott court proceedings and 2) his alleged late return each night from court in the Bronx to jail in Brooklyn where, he claims, his meals were cold, he "could not use the telephone, [and he] could never see the doctor when he wanted to." Whether construed as two equal protection claims or as one such claim and one Eighth Amendment claim of cruel and unusual punishment, these allegations are clearly insufficient as a matter of law.

With respect to the equal protection claim or claims, plaintiff alleges neither the involvement of a fundamental right, *e. g., Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), nor the use of a suspect classification, *e. g., Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), nor any facts which, generously construed, might tend to support one allegation or the other. Moreover, it is clear from plaintiff's own papers that defendant Ward's alleged actions were perfectly rational in light of the permissible objectives of the corrections system. *E. g., Williamson v. Lee Optical, Inc.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Plaintiff thus fails to state a cause of action under the equal protection clause. If plaintiff intends to assert a claim of cruel and unusual punishment, he clearly has failed to meet the standard of *Sostre v. McGinnis, supra,* and therefore, such a claim also must be dismissed.[3]

In sum, I conclude that plaintiff's complaint against defendant Kapelman is barred by the doctrine of judicial immunity and that none of the allegations against defendant Ward states a claim upon which relief can be granted. Given the foregoing, both defendants' motions are granted, and the complaint is dismissed.

So ordered.

---

**3.** See also *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (holding that a prisoner must allege acts amounting to a "deliberate indifference to serious medical needs" to state a claim under section 1983).